Ruffin, C. J.
The report of the processioner is radically defective, in not stating with precision the claims of the respective parties, so as to shew what lines were disputed or how far they were disputed. In every legal controversy there must be an identity given to the subject, and an issue between the parties. In actions at common law, in which the question of boundary is triable, the land is described and identified in the declaration or new assignment, and the issues arise on the pleas and rejoinder; and thus it appears upon the record what the controversy is. There is the same necessity for precision in proceedings of the kind under consideration, since it cannot otherwise be known to what subject the controversy relates, nor on what point it is to turn; and the Court cannot see what decision should be given, nor to whom costs should he awarded. Indeed, the very important and conclusive effect, given by the statute to these inquisitions, whereby two of them vest an absolute title, requires the Court to exercise the utmost vigilance to prevent surprize and injury to the true owners of land, by tolerating any undue laxity in the proceedings. As has just been said, it is *471 necessary that the parties should be brought to a point in this proceeding as in actions ; and the Legislature intended they should. But, unfortunately, instead of leaving the parties to the regular modes of pleading, whereby the issues may be joined technically and distinct!}»", they are delivered into the hands of a processioner, whose report is to serve the purposes of declaration and plea, and all the subsequent steps necessary to come to an issue. It is not surprising, then, that the "requisite precision is not observed, and so few proceedings of the kind can be sustained, though the Court has taken pains heretofore to explain themselves upon this subject as clearly as they could. Carpenter v. Whitworth, 3 Ire. 204, Mathews v. Mathews, 4 Ired. 155.
This report points out no specific dispute, but leaves every thing at large. It begins by saying, that the pro-cessioner “went upon the premises” on- a- certain branch of a creek, for the purpose of processioning “ the land of Jacob Hoyle.” But it gives no description whatever of the land thus claimed by Hoyle, so as fo shew that the subsequent dispute was touching it. Then it proceeds to say, that the processioner Was about, to run some line from a Spanish oak on the south side of the branch, and that he was forbidden by Wilson, and that he went to the next station, beginning at a black, dak and run thenoe. On the line, then, from the Spanish oak Ave must understand that there was “a dispute,” and that there was none on the line from the black oak ; because the former Wilson would not let him run and to running the latter he made no objection. How that could be it is not easy to understand, as the report calls the black oak “ the next station,” as we suppose in Hoyle’s deed or claim ; and therefore it would seem, the line must be a straight one from the Spanish to the black oak. Certainly, however, the report professes to state a dispute as to a line from the Spanish oak. But what it was no one can possibly divine, for it does not describe any course or distance, or *472 terminus for the line claimed by Hoyle from the Spanish oak, unless indeed the black oak be the terminus, and in that case there is the absurdity just mentioned. Rut, after going through six or eight lines after leaving the black dak, the processioner got to a maple corner, and was there also stopped by Wilson, although Hoyle wished him to run further, though in what direction and how far, or how many lines is not stated. It is obvious, therefore, that no particular dispute — no precise issue — upon any part of the boundary is here reported; and a report of the freeholders of particular lines, either from the maple or the Spanish oak, may not conform to' the claim of either party, although their province is “ to go on the lines disputed” and “ establish such disputed lines.” And thus it turned out, that in this case the freeholders in part did. For, beginning at the maple, where the processioner was stopped, they ran three lines, described by course, distance and termini, to the Spanish oak, at which the pro-cessioner wished to begin, and then again, a line south .54 east 119 poles from the Spanish to the black oak, where the processioner actually began his first survey. Therefore instead of deciding disputes raised in the report and establishing lines therein stated to be claimed by one party or the other, the freeholders have established lines, which, for ought that we see, neither party alleged to be his. In fine the processioner reported no issue between the parties, and there was, in fact, nothing definite to be tried ; and, therefore, all the proceedings were properly quashed.
Per Curiam. Judgment affirmed,